IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **EMMA HERNANDEZ,**<br><br>            **Plaintiff,**<br><br>vs.<br><br>**ISOTALENT, INC.**<br><br>            **Defendant.** | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:23-CV-831-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

      This matter is before the court on Defendant IsoTalent, Inc.'s Motion to Compel Arbitration [ECF No. 12]. On May 23, 2024, the court held a hearing on the motion. At the hearing, Plaintiff was represented by John E. Lattin and Kenneth Parkinson, and Defendant was represented by Matt W. Harrison. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

      IsoTalent is a global recruiting and employment firm that helps businesses source and identify qualified workers in the United States and abroad. Plaintiff Emma Hernandez began working for IsoTalent in March 2019, as an Executive Administrator/Recruiting Coordinator.

      On May 11, 2021, Hernandez entered into a Nondisclosure Agreement with IsoTalent as a condition of her employment. She signed it electronically. The purpose of the Nondisclosure Agreement is the protection of IsoTalent's confidential information. The Nondisclosure Agreement's arbitration provision states that "[e]xcept for matters for which injunctive relief is

1

sought pending arbitration, any dispute or disagreement hereunder shall be resolved by binding, expedited, confidential arbitration before a neutral arbitrator located in Utah County, Utah, USA and the decision of the arbitrator shall be final and binding on all Parties."

As a further condition of Hernandez's employment with IsoTalent, IsoTalent provided her with an Employee Handbook. At the end of the Employee Handbook, there is a Handbook Acknowledgement and Agreement ("A&A"). At the top of the A&A it states "please sign the acknowledgment form below and return it to Human Resources. This will let IsoTalent know that you have received the handbook. It is your responsibility to read and understand the contents of this handbook." At the end of the A&A, there is a designated place for the employee to sign and date the A&A. On May 18, 2022, Hernandez electronically acknowledged receipt of the Handbook.

Within the A&A, it provides: "I agree to abide by the terms of the Nondisclosure Agreement that I signed in connection with my employment with the Company." In addition, the A&A provides: "I further agree, in accordance with the Company's Nondisclosure Agreement, that I will submit any dispute arising under or involving my employment with IsoTalent or the termination of my employment to binding arbitration, and I hereby expressly waive any right to a trial by jury." Somewhat redundantly, the A&A then states: "I agree that arbitration will be the exclusive forum for resolving all disputes arising out of or involving my employment with IsoTalent or the termination of that employment."

The Employee Handbook states that its policies and procedures do not create a contract of employment. In the introduction of the Employee Handbook, IsoTalent also reserves the right to revise the handbook at any time and without notifying employees. The introduction of the Employee Handbook specifically states: "This handbook is not a contract, but employees should

read and understand it. It replaces any prior handbooks and inconsistent policies or statements. In the future, we may need to revise this handbook, and we will strive to make our employees aware of changes."

Within the A&A, it similarly states: "I understand and agree that it is my responsibility to read and familiarize myself with the provisions of the Employee Handbook. I also acknowledge that, except for the policy of at-will employment, the terms and conditions set forth in this handbook may be modified, changed or deleted at any time without prior notice to me and other employees. Any agreement or promise of any kind pertaining to my employment must be in writing and signed by an authorized Company executive." The record before the court does not include a signed A&A by Hernandez or IsoTalent. IsoTalent, however, has submitted records showing that Hernandez "acknowledged" the handbook.

On December 9 or 10, 2022, IsoTalent laid off Hernandez as part of a reduction in force, informing her that her position was eliminated. Plaintiff filed her Complaint in this action on November 13, 2023, alleging that her termination violated Title VII of the Civil Rights Act, the Americans with Disabilities Act ("ADA"), and was in violation of public policy.

## DISCUSSION

### <u>IsoTalent's Motion to Compel Arbitration</u>

IsoTalent argues that pursuant to the parties' purported arbitration agreement the court must stay this action pending arbitration. Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Federal courts have repeatedly recognized that there

is a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

A court must order arbitration as long as (1) the parties have agreed to arbitrate and (2) the dispute falls within the scope of the agreement. 9 U.S.C. §§ 3, 4; *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 770-71 (10th Cir. 2010). The parties do not dispute that Hernandez's claims in this lawsuit would fall within the A&A's broadly written arbitration provision. Hernandez, however, disputes whether she agreed to arbitrate.

IsoTalent bears the burden of demonstrating that a valid, enforceable arbitration agreement exists between the parties and that there is mutual assent. *Mitchell v. Wells Fargo*, 280 F. Supp. 3d 1261 (D. Utah 2017). Hernandez argues that IsoTalent has not carried its burden of establishing (1) the existence of a valid agreement to arbitrate (2) that was signed by Hernandez. IsoTalent, however, argues that the A&A's arbitration provision is a valid and enforceable arbitration agreement and that Hernandez agreed to arbitrate when she accepted the A&A and IsoTalent's offer of continued employment.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [s]he has not agreed so to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). To determine if there is a valid arbitration agreement, courts "should apply ordinary state-law principles that govern the formation of contracts." *Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 475-76 (10th Cir. 2006). Under Utah law, the formation of a contract requires an "offer, an acceptance, and consideration." *Mitchell v. Wells Fargo Bank*, 280 F. Supp. 3d 1261, 1280 (D. Utah 2017) (citing *Cea v. Hoffman*, 2012 UT App 101, ¶ 24). "An offer is a manifestation of willingness to enter

4

into a bargain, and an acceptance is a manifestation of assent to the offer, 'such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made.'" *Id.* "Consideration is present when there is an act or promise given in exchange for the other party's promise." *Id.* In Utah, an employee's continued services within the employment relationship can serve as consideration for an agreement with their employer. *Hampton v. Utah Transit Auth.*, No. 2:16-CV-01282-JNP-EJF, 2017 WL 3972488, at *5 (D. Utah Sept. 7, 2017).

"The court decides whether an agreement to arbitrate exists or whether a controversy is covered by the agreement." *Roberts v. Central Refrigerated Serv.*, 27 F. Supp. 3d 1256, 1259 (D. Utah 2014) (citing Utah Code. Ann. § 78B-11-107(2)). "An arbitrator decides whether 'a condition precedent to arbitrability has been fulfilled" and whether 'a contract containing a valid agreement to arbitrate is enforceable.'" *Id.* (quoting Utah Code Ann. § 78B-11-107(3)). "Utah law prescribes that the arbitration agreement is severable from the contract as a whole and the court need only determine whether the arbitration provision is enforceable." *Id.*

Hernandez, however, argues that the purported arbitration agreement is illusory and unenforceable. The relevant arbitration provision is in the Employee Handbook's A&A. Hernandez claims that the relevant arbitration provision in the Employee Handbook's A&A is illusory and that she did not sign the A&A, she merely acknowledged the handbook electronically. Accordingly, she contends that she did not agree to be bound by the terms.

Because IsoTalent expressly reserved the unilateral right to modify the terms of the Employee Handbook, Hernandez argues that the arbitration provision in the A&A is illusory. The introduction to the Employee Handbook states that IsoTalent may need to revise the handbook and that it would strive to notify the employees of such changes. The Handbook's A&A, which contains the arbitration provision, states that Hernandez "also acknowledge[s] that,

5

except for the policy of at-will employment, the terms and conditions set forth . . . may be modified, changed, or deleted at any time without prior notice to . . . employees." Thus, by the plain language of the handbook and the A&A, IsoTalent can modify the terms and provisions of the handbook unilaterally.

An arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (ability to choose nature of forum and alter arbitration without notice or consent renders arbitration agreement illusory); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (employer's ability to modify rules "in whole or in part" without notice to employee renders arbitration agreement illusory); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997) (handbook provision allowing employer to change arbitration agreement at will renders agreement illusory).

But Hernandez's arguments are based on case law from other states. It is well-settled that this court must apply Utah contract law in determining whether there is an enforceable arbitration agreement under the FAA because the parties entered into the agreement in Utah. "Utah law prescribes that the arbitration agreement is severable from the contract as a whole and the court need only determine whether the arbitration provision is enforceable." *Roberts*, 27 F. Supp. 3d at 1259.

In this case, the arbitration provision is contained in the accompanying A&A, not the Employee Handbook itself, and notes that "arbitration will be the exclusive forum for resolving all disputes arising out of or involving [Hernandez's] employment with IsoTalent or the termination of that employment." The arbitration provision does not reserve the right for IsoTalent to alter the arbitration's existence or its scope unilaterally. While the A&A contains an

6

acknowledgment by the employee that "the terms and conditions set forth in this handbook may be modified, changed, or deleted at any time without prior notice to me and other employees," the requirement to arbitrate disputes arising from Hernandez's employment is not found in the Handbook's policies or terms, but is a provision contained in the A&A, a companion agreement related to the Handbook, but not the Handbook itself. Therefore, IsoTalent cannot unilaterally modify the terms of the arbitration provisions in the A&A and the language regarding arbitration is not illusory.

The arbitration agreements in the cases Hernandez cites are factually distinguishable. In *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997), the court noted that the arbitration language was part of the employment manual and subject to the broad disclaimers contained in the manual. However, as noted above, the arbitration provision here is not one of the policies listed in the Employee Handbook but is a separate provision in the accompanying A&A that contained no reservations or conditions relating to arbitration.

In *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000), the court found the agreement illusory because it allowed the defendant to choose the nature of the forum or alter arbitration rules and procedures without notice or consent to the plaintiff. In contrast, here, the arbitration provision states that a dispute will be submitted to arbitration in accordance with the Nondisclosure Agreement. The Nondisclosure Agreement states that the arbitration provision shall occur "before a neutral arbitrator located in Utah County, Utah, USA." In contrast to *Floss*, this term contains no reservations or conditions and does not allow for the employer to modify the terms. Only the policies and procedures in the Employee Handbook can be modified, not the terms of the separate A&A or Nondisclosure Agreement.

In *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999), the parties'

agreement allowed Hooters to cancel the agreement to arbitrate and gave it the right to modify the arbitration rules "in whole or in part, whenever it wishes and without prior notice to the employee." There are no similar reservations in this case. It is only where "the appearance of a promise exists, i.e., a statement made in such a vague or conditional terms that the person making it commits himself to do nothing" that the alleged promise is "illusory and unenforceable." *Roberts v. Cent. Refrigerated Serv.*, 27 F. Supp. 3d 1256, 1258 (D. Utah 2014). There are no such vague or conditional terms in this case. There is no provision allowing for IsoTalent to unilaterally change the terms of the A&A or the terms of the Nondisclosure Agreement. Therefore, the arbitration provisions in this case are not illusory or conditional.

  The Employee Handbook in this case is not a contract. But the A&A IsoTalent asked Hernandez to sign in relation to receiving the Handbook is both an acknowledgement and an agreement. The title of the document is "acknowledgment and agreement" and the content of the document is just that. The first two paragraphs acknowledge receipt of the Handbook and IsoTalent's policy prohibiting discrimination, harassment, and retaliation, and the third paragraph is an agreement to arbitrate. The formation of a contract under Utah law, generally, requires only an offer, an acceptance, and consideration. Hernandez argues that there is no arbitration agreement because she did not sign the A&A. However, IsoTalent has record of the fact that Hernandez acknowledged the Handbook. That acknowledgement would have been by signing the A&A electronically. It does not matter whether the signature was done electronically. IsoTalent put forth the A&A, Hernandez electronically signed the A&A which acknowledged the Handbook and agreed to arbitration, and her continued employment with IsoTalent is consideration under Utah law.

  However, IsoTalent did not sign the A&A. The A&A itself states: "Any agreement or

8

promise of any kind pertaining to my employment must be in writing and signed by an authorized Company executive." That language would appear to require IsoTalent to sign an agreement to arbitrate any dispute relating to Hernandez's employment. The A&A has a signature line for the employee but not for IsoTalent. There is no evidence before the court that IsoTalent signed the A&A. But the A&A's arbitration provision states that Hernandez is agreeing "in accordance with the Company's Nondisclosure Agreement" that she "will submit any dispute arising under or involving [her] employment with IsoTalent or the termination of [her employment to binding arbitration." Therefore, the A&A's arbitration provision incorporates the Nondisclosure Agreement. The Nondisclosure Agreement attached as Exhibit A to IsoTalent's Motion to Compel Arbitration is also signed by only Hernandez. The Nondisclosure Agreement, however, states that "duly authorized representatives of the Parties have executed this Agreement." The record before the court does not show that the Agreement was, in fact, executed by an authorized representative of IsoTalent.

In *Ellsworth v. American Arbitration Ass'n*, 2006 UT 77 ¶ 14, 148 P.3d 983, the Utah Supreme Court stated that "the 'minimum threshold for . . . enforcement of an arbitration agreement is direct and specific evidence of an agreement between the parties.'" *Id.* (quoting *McCoy v. Blue Cross & Blue Shield of Utah*, 2001 UT 31 ¶ 17, 20 P.3d 901). "Direct and specific evidence requires non-inferential evidence." *Id.* "Any ambiguity in a contract is to be construed against the drafter." *Id.* ¶ 17. The *Ellsworth* court also held that "the fact that a person's name appears on a contract as a party to it, without more, is not direct and specific evidence that that particular person has assented to the agreement to arbitrate." *Id.* ¶ 18. However, this case is factually opposite of *Ellsworth*. In *Ellsworth*, the drafter of the arbitration provision was seeking to hold a party mentioned in the agreement but who did not sign the

agreement, to binding arbitration. Whereas, here, the drafter of the arbitration provision is the non-signatory. The *Ellsworth* court acknowledged that "[o]f course, no signature is required for a person to become a party to a contract." *Id.* ¶19. Federal courts have recognized that "[g]eneral contract principles can validate an unsigned agreement to arbitrate." *TransAsia Lawyers v. EcoNova, Inc.*, No. 1:13-CV-98-DN, 2014 U.S. Dist. LEXIS 69244 (D. Utah 2014). "[A] party can agree to submit to arbitration by means other than personally signing a contract containing an arbitration clause." *Internat'l Paper Co. v. Schwabedissen*, 206 F.3d 411, 416 (4th Cir. 2000). Likewise, "[a] nonsignatory is estopped from refusing to comply with an arbitration provision "when it receives a 'direct benefit' from a contract containing an arbitration clause." *Id.* at 417-18. Similarly, "Utah courts routinely prevent one party from claiming that a contract is invalid if they accept that contract's benefits." *Diatect Int'l Corps. v. Organic Materials Review Inst.*, No. 2:05CV465, 2007 U.S. Dist. LEXIS 16295, at *7-8, 12-13 (D. Utah Mar. 7, 2001). "Utah courts have long held that this standard is met when one party accepts the benefit of the bargain and performs under its terms only to later question the validity of the instrument." *Id.* A party is estopped from avoiding an arbitration clause when the "party accepts the benefit" of the contract "only later to question the validity of the instrument." *Id.*; *see also Ellsworth*, 2006 UT 77, ¶ 20 (party is "estopped from avoiding arbitration" when party "seeks to benefit from some portions of the contract but avoid the arbitration provision"); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1294 n.17 (10th Cir. 2017) (same).

      IsoTalent is not a non-signatory as in *Ellsworth* because it is the other party to the contract, the drafter of the agreements, and the only person Hernandez was agreeing to arbitrate disputes against. This is not a situation involving a parent company, agent, or the like. If Hernandez was seeking to compel arbitration against IsoTalent, the court would have no problem

10

under these circumstances compelling IsoTalent to arbitrate under the agreements. The reverse, then, would typically be true as well.

But, while IsoTalent is clearly the other party to the arbitration agreements in this case, it also appears to have included a requirement on itself to have an authorized company executive sign "[a]ny agreement or promise of any kind pertaining to [Hernandez's] employment." An agreement to arbitrate any dispute pertaining to Hernandez's employment or termination is "any agreement" of "any kind pertaining to [Hernandez's] employment." Because there is no evidence before the court as to whether IsoTalent signed the A&A or the Nondisclosure Agreement, the court gives the parties 45 days, until August 22, 2024, to conduct discovery on this issue. By no later than August 30, 2024, the parties shall file any necessary exhibits and supplemental briefs on this issue, not to exceed more than eight pages. The court will then issue a final ruling on IsoTalent's Motion to Compel Arbitration.

## CONCLUSION

Based on the above reasoning, the court defers ruling on Defendant IsoTalent's Motion to Compel Arbitration [ECF No. 12]. The parties have 45 days, until August 22, 2024, to conduct discovery on whether the arbitration agreements were signed by IsoTalent. By no later than August 30, 2024, the parties shall file any necessary exhibits and supplemental briefs on this issue, not to exceed more than eight pages.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge